**MAKRO, INC. et al., Appellees,**

v.

**UNITED FOOD & COMMERCIAL WORKERS UNION, LOCAL 880, Appellant.**

[Cite as *Makro, Inc. v. United Food & Commercial Workers Union, Local 880* (1989), 64 Ohio App.3d 439.]

Court of Appeals of Ohio,
Lake County.

No. 88–L–13–190.

Decided Dec. 26, 1989.

*Terry E. Lardakis,* for appellees.
*Mark A. Rock,* for appellant.

FORD, Judge.

The basic facts of this case are not in dispute. Appellee, Makro, Inc. is a lessee anchor store in Loehmann's Plaza, a shopping center located in Willoughby Hills. The shopping center is owned in fee simple by appellee Renaissance Properties Company, d.b.a. Loehmann's Plaza ("Renaissance"). Appellee is a large volume warehouse club store that offers food and retail sales to its customer/members. The store does not utilize union labor.

Shortly before the opening of appellee, appellant United Food & Commercial Workers Union, Local 880 notified appellee that appellant would establish an informational picket line and distribute handbills in front of appellee, commencing at appellee's grand opening. The purpose of these picketers was to inform the public that appellee did not employ union labor. Appellee was informed that appellant would neither cause work stoppages nor inhibit deliveries or customer egress in any way. The Mayor and Police Chief of Willoughby Hills were also notified of appellant's intentions.

Appellant stationed pickets in front of the entrance to appellee and located handbillers in front of each of the exit doors. Purportedly, union personnel were on hand each day to supervise the picketers and regulate the picket lines. Appellant claims that the picketing was carried on without incident. Appellee, however, demonstrated several incidents in which words were exchanged between picketers and customers. Appellee also argued that picketers littered the parking lot and caused disturbances by excessively blaring their car radios.

After requesting several times that appellant move its picketers away from the entrances and exits, appellee requested a temporary injunction against appellant, in Lake County Court of Common Pleas, on June 6, 1988. On June 21, 1988, appellant filed an unfair labor charge against appellee with the National Labor Relations Board. On July 1, 1988, after a hearing, the common pleas court issued a temporary injunction against appellant which limited the amount of picketers and handbillers at Loehmann's Plaza to four, and required that the picketers remain twenty-five feet away from the store.

This injunction was to remain in effect until July 14. On July 14, however, the parties agreed to extend the ambit of the temporary injunction, so that it would remain in effect until August 15.

After addressing procedural matters and continuing the injunction until August 30, the trial court held a hearing on August 30, 1988. This hearing was to determine if appellee's motion for preliminary injunction was appropriate. Appellant argued that under the current restrictions, it was unable to effectively disseminate handbills to the public and perform its educational message. Appellee, for its part, alleged infringement of the injunction restrictions by the union. On September 16, 1988, the trial court issued a permanent injunction, which assimilated the parameters of the temporary injunction.

During the pendency of this appeal, appellant's charge to the National Labor Relations Board was heard by an administrative law judge. The judge held that "[r]espondent [Makro] has not engaged in the unfair labor practices alleged in the complaint." *Makro, Inc. v. United Food & Commercial Workers Union, Local No. 880* (Oct. 26, 1989), No. 8–CA–21058, unreported, at 8.

Appellant now timely appeals and raises the following assignments of error:

"1. The trial court erred to the prejudice of defendant in exercising jurisdiction over this matter.

"2. The trial court erred to the prejudice of Defendant in unreasonably and broadly regulating Defendant's picketing by limiting the number of pickets and moving the pickets from the doors of the store and into the parking lot.

"3. The trial court erred to the prejudice of Defendant in failing to give effect to the free speech provision of the Ohio Constitution."

 In appellant's first assignment of error, appellant contends that the state trial court erred in exercising jurisdiction over this case. Appellant urges that correct analysis of this argument turns on an interpretation of a United States Supreme Court case entitled *Sears, Roebuck & Co. v. San Diego Cty. Dist. Council of Carpenters* (1978), 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209. As *Sears, supra,* notes, the original standard for determining whether federal jurisdiction preempted that of the state was set forth in *San Diego Building Trades Council v. Garmon* (1959), 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, which stated:

"When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of

state interference with national policy is to be averted." *Id.* at 245, 79 S.Ct. at 780, 3 L.Ed.2d at 783.

Subsequent cases of the Supreme Court modified the *Garmon* test. They indicated that the doctrine of preemption was not inflexible, and stated that *Garmon* was not to be applied mechanically. See, *e.g.*, *Farmer v. United Brotherhood of Carpenters* (1977), 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338.

The *Sears* court undertook a detailed examination of the question of primary jurisdiction and preemption in two contexts: jurisdiction when the activity is "arguably prohibited" and jurisdiction where the activity is "arguably protected" under the Act. As both parties correctly maintain, the court saw no difficulty in allowing state jurisdiction in situations in which the union activity is arguably prohibited. The court noted:

" * * * the Court has upheld state-court jurisdiction over conduct that touches 'interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act.'" *Sears*, 436 U.S. at 195, 98 S.Ct. at 1756, 56 L.Ed.2d at 224, quoting *Garmon, supra*, 359 U.S. at 244, 79 S.Ct. at 779, 3 L.Ed.2d at 782.

Examples of cases where local feeling would run high are scenarios in which the union activity engenders violence, slander, or other tortious activity. The court looked to see if the state controversy was identical to or divergent from that which could have been, but was not presented to the labor board (by the property owner/employer). If the issue was not identical, as would be the case in the resolution of tortious behavior, there was no problem with the exercise of state jurisdiction. Appellee points to this section of *Sears* as justification for the trial court's ruling.

As appellant correctly maintains, however, *Sears* also addresses situations in which the union activity is arguably protected. In these scenarios, the trespassory informational picketing can be privileged by virtue of the National Labor Relations Act. Consequently, a state court would have to determine whether the trespass was privileged before issuing an injunction. This preliminary inquiry requires encroachment into jurisprudence which is generally within the sole ambit of the National Labor Relations Board.

■ Therefore, when an aggrieved party avails itself of the National Labor Relations Board's jurisdiction, regarding the question of whether an activity is arguably protected, the state court loses jurisdiction over the case. As appellant timely filed an unfair labor practice charge before the National

Labor Relations Board, it correctly asserts that the state court lacked jurisdiction of this case under the *Sears* rationale.

Had the U.S. Supreme Court's jurisprudential inquiry into matters of primary jurisdiction terminated with *Sears*, appellant's argument would be clearly prevailing. However, appellant fails to address the impact of *Internatl. Longshoremen's Assn., AFL–CIO v. Davis* (1986), 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389. In *Davis, supra,* the court considered the question of whether a federal preemption question was an affirmative defense which must be asserted in the trial court or be waived. The Alabama Supreme Court had concluded that the petitioner-union had waived the preemption argument by failing to plead it as an affirmative defense. *Id.* at 386, 106 S.Ct. at 1909, 90 L.Ed.2d at 397; *Gilchrist v. Jim Slemons Imports, Inc.* (C.A.9, 1986), 803 F.2d 1488, 1497. (This decision was made pursuant to Ala.R.Civ.P. 8[c] which required that affirmative defenses be specifically asserted or else be deemed waived.)

The Supreme Court stated that the issue of preemption was "a claim that the state court has no power to adjudicate the subject matter of the case, and when a claim of *Garmon* pre-emption is raised, it must be considered and resolved by the state court." *Davis, supra,* 476 U.S. at 393, 106 S.Ct. at 1913, 90 L.Ed.2d at 402. The petitioner-union was therefore not deemed to have waived its preemption claim merely by not raising it as an affirmative defense. However, the petitioner-union was unsuccessful in persuading the Supreme Court that the state court proceedings should have been preempted. Instead, the court held that "the party asserting pre-emption must make an affirmative showing that the activity is arguably subject to the Act" and further held that "those claiming pre-emption must carry the burden of showing at least an arguable case before the jurisdiction of a state court will be ousted." *Davis, supra,* 476 U.S. at 399 and 396, 106 S.Ct. at 1916 and 1915, 90 L.Ed.2d at 406 and 404. The party asserting pre-emption must "make an affirmative showing that the activity is arguably subject to the [National Labor Relations] Act." *Id.* at 399, 106 S.Ct. at 1916–1917, 90 L.Ed.2d at 406; *Northern California Newspaper Organizing Comm. v. Solano Assoc.* (1987), 193 Cal.App.3d 1644, 1648, 239 Cal.Rptr. 227, 230.

Examination of the record in the case *sub judice* indicates that appellant did not carry the burden of proving the affirmative defense. Despite the appellant's propounded argument that the picketing was arguably protected under Section 7 of the Act, appellant did not make any showing that the facts in this case demonstrated that the picketing activity was so protected; instead, appellant merely directed the court to other picketing cases and argued preemption by analogy. Appellant further neglected to inform the trial court

of the specific provisions of Section 7 which arguably protect appellant's activities. As a result, appellant failed to carry its burden of proof and its first assignment is without merit.

■ Appellant's second assignment of error argues that the trial court abused its discretion in imposing the permanent injunction. Appellant concedes that a state court has the power to enjoin mass picketing, violence, and obstruction of access without infringing on the jurisdiction of the National Labor Relations Act. *Garmon, supra,* 359 U.S. at 245, 79 S.Ct. at 779, 3 L.Ed.2d at 783. Appellant denies, however, that such activities were present in the case at bar.

As appellee maintains, "unless there is a plain abuse of discretion on the part of trial courts, in granting or refusing injunctions, reviewing courts will not disturb such judgments." *Perkins v. Quaker City* (1956), 165 Ohio St. 120, 125, 59 O.O. 151, 153, 133 N.E.2d 595, 598. Both parties agree that the standard for determining whether there has been an abuse of discretion in the issuance of an injunction was set forth in *Superior Savings Assn. v. Cleveland Council of Unemployed Workers* (1986), 27 Ohio App.3d 344, 27 OBR 402, 501 N.E.2d 91, which states that a court has discretion in framing an injunction and as long as picketing is not forbidden entirely, the court's discretion will usually be upheld. *Superior Savings, supra,* at 346, 27 OBR at 404–405, 501 N.E.2d at 94; *LaFrance Elec. Constr. & Supply Co. v. Internatl. Bhd. of Elec. Workers* (1923), 108 Ohio St. 61, 86–87, 140 N.E. 899, 906.

■ When establishing an injunction of the type in existence in the case *sub judice,* the court is supposed to balance the rights of the parties in such a manner that the right of the union to be heard is balanced fairly with the property right of the owner/lessee. The court is required to provide the union reasonable means to communicate its message, if not always the most effective means. *Sears, supra,* 436 U.S. at 205, 98 S.Ct. at 1761, 56 L.Ed.2d at 230. Appellant argues that, since there is no evidence of violence in the record and problematic contacts between union representatives and shoppers were "de minimis," the trial court abused its discretion in rendering its balancing calculus in such a way that appellant was forced to scale back its informational picketing and handbilling.

Appellant is correct in its assertions that, by and large, picketing activities have been peaceful and orderly. However, the record does not indicate a plain abuse of discretion by the trial court. Under the injunction, appellant is allowed to continue its informational picketing and handbilling, in contravention of what would normally be the appellees' rights to be free from trespass. The trial court balanced the need to allow appellant to voice its message by

restricting (but by no means banning) the number of picketers and handbillers on the premises. In fact, the state trial court was more liberal in its allowance of picketers than the administrative law judge of the NLRB. Appellant does not direct this court to case law that states that a court may *only* enter an injunction in instances of actual present violence.

Appellant's second assignment is without merit.

■ Appellant's final assignment of error argues that the injunction imposed by the trial court violates appellant's rights to free speech under Section 11, Article I, Ohio Constitution. This section provides:

"Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press. * * * "

Appellant directs this court's attention to case law in Washington and California, which found that an injunction against picketing infringed free speech, under similar provisions in their state constitutions.

■ Contrary to appellant's contentions, the right to free speech is not unlimited.

"The right to picket is not absolute. It must be 'asserted within the limits of not unreasonably interfering with the rights of others to use the sidewalks and streets, to have access to store entrances, and where conducted in such manner as not to deprive the public of police and fire protection.'" *Superior Savings, supra,* 27 Ohio App.3d at 346, 27 OBR at 404, 501 N.E.2d at 93, quoting *Kelly v. Page* (C.A.5, 1964), 335 F.2d 114, 199.

Therefore, the First Amendment rights of picketers are subject to a balancing test, and the calculus to be performed is within the trial court's discretion.

As discussed, the trial court did not prohibit appellant from picketing and handbilling. Instead, the court restricted the amount of persons who could engage in the activity at any one time and the proximity of the picketers to the store. Nothing in the record indicates that balancing performed by the trial court was a clear abuse of discretion. Therefore, appellant's final assignment of error has no merit.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., JOSEPH E. MAHONEY, J., concur.